Andrew Kazakes, SBN 277912
akazakes@lafla.org
Robyn Smith, SBN 165446
rsmith@lafla.org
Milo Schaberg, SBN 355382
mschaberg@lafla.org
LEGAL AID FOUNDATION OF LOS ANGELES
5301 Whittier Boulevard, 4th floor
Los Angeles, CA 90022
Telephone:   (213) 640-3906
Facsimile:    (213) 640-3911

Attorneys for Plaintiffs
MARY ANDERSON and
NICOLE COE

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY ANDERSON and NICOLE COE, | Case No.: 24-0479524 |
| Plaintiffs, | **COMPLAINT FOR REVIEW OF FINAL AGENCY ACTION AND DECLARATORY RELIEF** |
| v. | |
| LINDA MCMAHON, in her official capacity as Secretary of the United States Department of Education, and UNITED STATES DEPARTMENT OF EDUCATION, | |
| Defendants. | |

## INTRODUCTION

1.    The Higher Education Act ("HEA"), 20 U.S.C. § 1087(a)(1), and its

1

implementing regulations require the Secretary of Education and the U.S. Department of Education (the "Department") (referred to collectively as "Defendants") to discharge the federal student loans of borrowers who show that they have a total and permanent disability that is both likely to end in death or last at least five years and prevents them from engaging in substantial gainful activity. Plaintiffs Mary Anderson and Nicole Coe (collectively, "Plaintiffs"), disabled federal student loan borrowers, bring this action pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2), to challenge Defendants' closure of their disability discharge applications as arbitrary and capricious, an abuse of discretion, and contrary to law. Plaintiff Mary Anderson also seeks a declaration pursuant to the APA, 5 U.S.C. § 706(1), that Defendants' failure to instruct her loan servicer to stop collection on her loans for the entire time that her disability discharge application remained pending was agency action unlawfully withheld.

2.     Over the past year, Plaintiffs have jumped through multiple hoops erected by Defendants in order to have their disability discharge applications reviewed. In November 2024 and February 2025, each Plaintiff submitted a complete disability discharge application to the Department that complied with all regulatory requirements, including doctor certifications dated within 90 days of submission. After waiting for five to seven months while Defendants implemented a new online disability discharge system, Plaintiffs contacted the Department's telephone hotline about the status of their applications. The Department informed Plaintiffs that although it could confirm that it had in fact received their discharge applications, the Department did not have a copy of them. Rather than obtaining a copy of these applications from the prior disability discharge loan servicer, NelNet, the Department requested that Plaintiffs submit new applications along with new doctor certifications. Plaintiffs had never been notified of this in writing.

Complaint for Review of Final Agency Action and Declaratory Relief

3.      Plaintiffs attempted to comply with Defendants' instructions, each submitting new and complete applications that met all published regulatory requirements in September and October 2025. Although their doctors' certifications were again dated within 90 days of the date of submission, as explicitly required by the regulations, in December 2025 the Defendants closed Plaintiffs' applications on the grounds that the doctor certifications were not signed within 90 days of the Department's *processing* date of their discharge applications.

4.      Thus, although it has now been over one year since Plaintiffs submitted their first discharge applications, Defendants have never reviewed the merits of their completed applications as required by law and Plaintiffs now face resumed collection on their student loans unless they each submit a third application along with a third doctor certification. In essence, Defendants have penalized Plaintiffs for the Department's failure to timely process their applications, something over which they have no control.

5.      In addition, Defendants had failed to instruct Plaintiff Mary Anderson's loan servicer to stop collection on her loans for the entire time her disability discharge application remained pending, as required by the regulations. Instead, upon information and belief, Defendants instructed Plaintiff Anderson's loan servicer to stop collection for only a few months. As a result, Plaintiff Anderson's loan servicer restarted collection in August 2025 while her disability discharge application remained pending.

6.      Upon information and belief, Defendants have taken these actions based on policies that violate the HEA and underlying regulations. Plaintiffs challenge these regulations are arbitrary, capricious, and contrary to law under the APA.

7.      Defendants' illegal actions have caused both Plaintiffs unnecessary

3

stress and suffering that has impacted their health and disabilities.

## JURISDICTION AND VENUE

8.    This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, the Administrative Procedure Act, 5 U.S.C. §§ 701, 702 and 706 (the "APA").

9.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e)(1) because a substantial part of the events giving rise to the claim occurred in this district and Plaintiffs reside in this district.

## PARTIES

10.    Plaintiff MARY ANDERSON (hereinafter "Ms. Anderson") is a natural person who resides, and at all relevant times has resided, in Los Angeles County, California.

11.    Plaintiff NICOLE COE (hereinafter "Ms. Coe") is a natural person who resides, and at all relevant times has resided, in Los Angeles County, California.  Coe and Anderson are collectively referred to herein as "Plaintiffs."

12.    Defendant LINDA MCMAHON is the Secretary of Education (hereinafter "Secretary") and is charged under the Higher Education Act with the supervision and management of all decisions and actions of the U.S. Department of Education. She is sued in her official capacity.

13.    Defendant U.S. DEPARTMENT OF EDUCATION (the "Department") is an agency of the United States within the meaning of the APA. It is responsible for overseeing and implementing rules for the federal student loan program.  The Secretary and the Department are collectively referred to herein as "Defendants."

///

///

4

# BACKGROUND

## *Secretary's Authority over the Federal Student Loan Programs*

14.     Title IV of the Higher Education Act of 1965 ("HEA"), 20 U.S.C. §§ 1070-1099d, charges Defendants with the responsibility of administering and overseeing the federal student loan programs, including the Federal Family Education Loan ("FFEL") and Direct Loan programs.

15.     Under the FFEL program, private lenders issued student loans to borrowers. 20 U.S.C. §§ 1077, 1091(b).  These loans were insured by guaranty agencies and in turn reinsured by the Department. 20 U.S.C. § 1078(b)-(c). As of July 1, 2010, no new loans can be made under the FFEL program.

16.     Under the Direct Loan program, the Department issues student loans directly to borrowers. 20 U.S.C. §§ 1087a, 1087e.

17.     Direct Loans and FFEL program loans have the same terms, conditions, and benefits. 20 U.S.C. § 1087e(a)(1).

18.     There is no statute of limitations on the collection of Direct Loans and FFEL program loans. 20 U.S.C. § 1091a(a)(2).

19.     The Secretary has promulgated regulations that dictate certain procedures that lenders, guaranty agencies and the Department must follow in administering the FFEL program loans and Direct Loans. 34 C.F.R. Parts 682 (FFEL program) and 685 (Direct Loan program).

## *Total and Permanent Disability Discharges*

20.     The HEA requires Defendants to discharge the federal student loans of a borrower who becomes "permanently and totally disabled." 20 U.S.C. § 1087(a)(1).

21.     The HEA further provides that a borrower has a total and permanent disability when they are "unable to engage in substantial gainful activity by reason

Complaint for Review of Final Agency Action and Declaratory Relief

of any medically determinable physical or mental impairment that can be expected to result in death, has lasted for a continuous period of not less than 60 months, or can be expected to last for a continuous period of not less than 60 months." *Id.*

22.    The Department has promulgated regulations governing the availability of a total and permanent disability discharge ("disability discharge") for borrowers who obtain FFEL Program loans and Direct Loans. 20 U.S.C. § 1087(c)(1); 34 C.F.R. §§ 682.402(c) (FFEL), 685.213 (Direct Loan).

23.    To qualify for a disability discharge based on the certification of a medical professional, the borrower must submit a disability discharge application to Defendants. 34 C.F.R. §§ 682.402(c)(2)(iv) (FFEL) and 685.213(b)(1) (Direct Loan).

24.    The disability discharge application must contain a certification that the borrower is totally and permanently disabled according to the standard defined in the HEA and regulations by one of the following medical professionals:

      a.    a physician who is a doctor of medicine or osteopathy legally authorized to practice in a State;

      b.    a nurse practitioner or physician assistant licensed by a State; or

      c.    a certified psychologist at the independent practice level who is licensed to practice in the United States.

34 C.F.R. §§ 682.402(c)(1)(iv)(A), (B) (referring to 34 C.F.R. § 682.200(b)) (FFEL), 685.213(b)(2)(i), (ii) (referring to 34 C.F.R. § 685.102(b)) (Direct Loan).

25.    The borrower must submit the disability discharge application within 90 days of the date the physician, nurse practitioner, physician assistant, or psychologist certifies the application. 34 C.F.R. §§ 682.402(c)(2)(v) (FFEL), 685.213(b)(3) (Direct Loan).

26.    After Defendants receive a disability discharge application, they and

any other loan holder must suspend all collection activity or maintain the suspension of collection activity on all of the borrower's federal student loans. 34 C.F.R. §§ 682.402(c)(2)(viii), (ix)(B) (FFEL), 685.213(b)(3)(i), (iii) (Direct Loan).

27.    In addition, Defendants and any other loan holders must continue to suspend collection activity on all of the borrower's loans while Defendants review the borrower's disability discharge application and may only resume collection if, and after, Defendants deny the application. 34 C.F.R. §§ 682.402(c)(2)(ix)(B), (3)(v)(B), (C), (c)(7)(ii) (FFEL), 685.213(b)(3)(iii), (4)(iv)(B), (C) (Direct Loan).

28.    When Defendants determine that a disability discharge application is complete, they must review it for whether a borrower is eligible for a disability discharge under the HEA and regulations. 34 C.F.R. §§ 682.402(c)(2)-(3), 685.213 (b)(1)-(4) (Direct Loans).  Defendants may only stop processing a disability discharge application and request missing information if the application is incomplete. 34 C.F.R. §§ 682.402(c)(2)(vii) (FFEL), 685.213 (b)(3)(ii) (Direct Loans).

29.    After Defendants determine that a borrower is eligible for a disability discharge, the discharge must be granted and effective as of the date the physician, nurse practitioner, physician assistant, or psychologist certified the borrower's application. 34 C.F.R. §§ 682.402(c)(3)(i)(A) (FFEL), 685.213(b)(4)(i)(A) (Direct Loan):

    a.    Notify the borrower that the disability discharge application has been approved and that the loan has been discharged. 34 C.F.R. §§ 682.402(c)(3)(iii), (iv) (FFEL), 685.213(b)(4)(iii) (Direct Loan).

    b.    Discharge the borrower's obligation to make further payments on the loan. 34 C.F.R. §§ 682.402(c)(3)(iv) (FFEL), 685.212(b), 685.213(b)(4)(iii) (Direct Loan).

7

c.      Return any payment that was received after the date the physician, nurse practitioner, physician assistant, or psychologist certified the borrower's application to the borrower. 34 C.F.R. §§ 682.402(c)(3)(iii) (FFEL), 685.212(g)(2), 685.213(b)(4)(iii) (Direct Loan). In addition, any other loan holder must similarly return any payment received after the physician, nurse practitioner, physician assistant, or psychologist certified the borrower's application to the borrower. 34 C.F.R. §§ 682.402(c)(7)(i)(C) (FFEL).

30.     There is no time limit on a borrower's eligibility for a disability discharge.

## FACTUAL ALLEGATIONS

### _Plaintiff Mary Anderson_

31.     Plaintiff Mary Anderson is currently 73 years old and resides in Los Angeles, CA.

32.     In 1983, Ms. Anderson obtained two FFEL loans in a total principal amount of $4,000 to attend City University of New York.

33.     After struggling to repay these loans over the last 40 years, Ms. Anderson now owes a balance of approximately $30,000. Currently these loans are held and serviced by a guaranty agency/loan servicer, the Higher Education Loan Authority of Missouri ("MOHELA").

34.     The Department informed the public that, from late 2024 to sometime in spring 2025, it would not process any disability discharge applications as it transitioned its disability discharge operations from one third-party contractor, NetlNet, to other third-party contractors. It also stated that borrowers could continue to submit disability applications to the Department during this time.

35.     Ms. Anderson suffers from a severe heart condition called ischemic

8

cardiomyopathy.

36.    On February 27, 2025, the Legal Aid Foundation of Los Angeles ("LAFLA") submitted a disability discharge application on Ms. Anderson's behalf to the Department.

37.    The discharge application was submitted via U.S. mail to the following address provided on the Department's website:  U.S. Department of Education – TPD Servicing, P.O. Box 300010, Greenville, Texas, 75403.

38.    The application was signed by Ms. Anderson and included a disability certification completed and signed by Ms. Anderson's physician, Kristal Young, who is licensed to practice medicine as a physician by the state of California, as required by 34 C.F.R. § 682.402(c)(2)(iv).

39.    The certification was dated January 20, 2025, within 90 days of the date of submission of the disability discharge application, as required by 34 C.F.R. § 682.402(c)(2)(v).

40.    Dr. Young certified that Ms. Anderson meets the Department's total and permanent disability discharge standard because she cannot engage in substantial gainful activity due to an impairment that is likely to result in death.

41.    Dr. Young specified that Ms. Anderson suffers from a diagnosis of ischemic cardiomyopathy and heart failure. Ischemic cardiomyopathy is a narrowing of blood vessels and therefore reduces the level of oxygen to the heart. For this permanent condition, the heart muscle is damaged and cannot effectively pump blood on its own.

42.    Because Ms. Anderson's disability discharge application met the requirements of 34 C.F.R. §§ 682.402(c)(2)(iv) and (c)(2)(v), the application was complete and the regulations required Defendants to review Ms. Anderson's disability discharge application for whether she was eligible for a disability

9

discharge under the HEA and regulations. 34 C.F.R. § 682.402(c)(2)-(3).

43.    The regulations also required Defendants to instruct Ms. Anderson's loan servicer to stop collection on her loans until the Department reviewed her disability discharge application and issued a decision. 34 C.F.R. §§ 682.402(c)(2)(ix)(B), (3)(v)(B), (C), (c)(7)(ii).

44.    Upon information and belief, the Defendants did not instruct Ms. Anderson's loan servicer, MOHELA, to stop collection on her loans. While her application was pending, MOHELA continued to collect on Ms. Anderson's loans by sending her a monthly payment statement in March 2025, demanding that she pay $273.03 on her loans no later than April 8, 2025.

45.    In March 2025, LAFLA and Ms. Anderson called MOHELA to request forbearance on her FFEL loans based on her pending disability discharge application. They had difficulty making the request because they were unable to talk with a MOHELA representative even though they made multiple calls. On at least two occasions, they had to wait on hold for over an hour and after finally reaching a MOHELA representative, were disconnected.

46.    Finally, on March 14, 2025, LAFLA and Ms. Anderson were able to talk to a MOHELA representative by telephone and request a forbearance based on the pending disability discharge application. MOHELA's representative agreed to place the loans in forbearance, but stated that the forbearance would end on September 2025, even if the application was still pending at that time.

47.    Because Ms. Anderson never received any written notifications from Defendants about her application in writing, by email or by telephone, on June 13, 2025, LAFLA and Ms. Anderson called the Department's disability discharge hotline to check on the status of her application. The representative stated that although she could confirm, from the Department's data system, that a disability

Complaint for Review of Final Agency Action and Declaratory Relief

discharge application for Ms. Anderson had been received by the Department in February 2025, the Department did not have and would not obtain a copy of the application.

48.    The representative stated that Defendants would not review her application and instructed Ms. Anderson to submit a new application online.

49.    On June 17, 2025, LAFLA sent a complete copy of the application by facsimile to the Department's TPD Servicing facsimile number (540-212-2415). LAFLA requested that the Department process the completed application as required by the applicable regulations with the original application date of February 27, 2025, since the application was lost through the Department's error, not Ms. Anderson's.

50.    In late July 2025, Ms. Anderson received a letter dated July 22, 2025, from the Department rejecting Dr. Young's certification because it was out of date, even though the certification was dated within 90 days of the date Ms. Anderson submitted her disability discharge application as required by 34 C.F.R. § 682.402(c)(2)(v).  Although first doctor certification was dated within 90 days of the original date of submission in February 2025, the letter stated: "There is an issue with your [TPD] discharge application. Required information from your application is missing or invalid. We can't process your form without this information. You have until 10/20/2025 to fix the following issue(s) to ensure your application is successfully processed: . . . The medical professional did not sign the application within the 90-day limit."

51.    Subsequently, in August 2025, even though her disability discharge application was still pending, MOHELA resumed collection on Ms. Anderson's loans by sending her a statement demanding a monthly payment of $273.03 on September 6, 2025.

52.     Upon information and belief, Defendants has instructed its loan servicers, including MOHELA, to stop collection for only a few months on loans for which any disability discharge applications are pending, including Ms. Anderson's, even when those applications have not yet been reviewed or decided by the Department.

53.     Ms. Anderson and LAFLA therefore called MOHELA to request another forbearance based on the pending disability discharge application, but MOHELA claimed it had no record of servicing Ms. Anderson's FFEL Loans. LAFLA therefore faxed a letter to MOHELA requesting a forbearance in writing. MOHELA never responded to this request.

54.     On September 25, 2025, LAFLA submitted a new doctor certification form completed and signed by Dr. Young to the Department. This doctor certification was dated September 24, 2025.

55.     LAFLA submitted the new certification form to the Department via facsimile with a cover letter requesting extension of the forbearance on Ms. Anderson's FFEL Loans.

56.     In this new certification, Dr. Young again stated that Ms. Anderson is not able to engage in substantial gainful activity due to an impairment that is expected to result in death. Dr. Young again provided a diagnosis of ischemic cardiomyopathy.

57.     In early October 2025, Ms. Anderson began receiving confusing communications from Defendants. Even though she had only faxed the Department an updated doctor certification, not a new application, the first letter dated October 1, 2025, stated: "We have stopped processing your [TPD] discharge application because: . . . You previously submitted an application that is currently being reviewed. We will close the new application and continue reviewing the original

Complaint for Review of Final Agency Action and Declaratory Relief

application you submitted."

58.     Upon receiving this letter, concerned that the Department was not reviewing Ms. Anderson's February 2025 application, LAFLA and Ms. Anderson attempted to re-submit the new doctor certification on www.studentaid.gov. The website, however, would not allow submission of a new doctor certification without the submission of a new discharge application.

59.     As a result, on October 7, 2025, LAFLA and Ms. Anderson submitted a new disability discharge application on www.studentaid.gov and uploaded the new doctor certification form online.

60.     Because Ms. Anderson's second disability discharge application met the requirements of 34 C.F.R. §§ 682.402(c)(2)(iv) and (c)(2)(v), the application was complete and the regulations required Defendants to review the second disability discharge application for whether she was eligible for a disability discharge standard under the HEA and its regulations.  34 C.F.R. §§ 682.402(c)(2)-(3).

61.     Shortly thereafter, in October 2025, Ms. Anderson received a second confusing letter from Defendants stating, "We have stopped processing your [TPD] discharge application because: . . . You previously submitted an application that is currently being reviewed.  We will close the new application and continue reviewing the original application you submitted."

62.     On October 8, 2025, Ms. Anderson received a vague and confusing email from Defendants stating, "We closed your TPD Discharge Application Due To Missing or Invalid Information."

63.     On October 10, 2025, Ms. Anderson received a second vague and confusing email from Defendants, again stating, "We closed your TPD Discharge Application Due To Missing or Invalid Information."

Complaint for Review of Final Agency Action and Declaratory Relief

64.     Therefore, on October 22, 2025, LAFLA once again submitted the doctor certification signed on September 24, 2025, to the Department via facsimile.

65.     In late October 2025, during a telephone call to the disability discharge hotline, the Department informed LAFLA that despite these emails, Ms. Anderson's disability discharge application was not closed and was being processed by the Department.

66.     On December 24, 2025, LAFLA received an email regarding Ms. Anderson's disability discharge application stating, "We closed your TPD Discharge Application Due To Missing or Invalid Information."

67.     Then, Ms. Anderson received a letter dated January 9, 2026, from the Department stating, "We have stopped processing your [TPD] discharge application because: . . . You did not provide supporting documentation within the 90-day window. We have closed your application."

68.     Defendants provided no other information regarding this "90-day window."

69.     Thus, the Department closed Ms. Anderson's October 2025 disability discharge application without any review of whether she was eligible for a total and permanent disability discharge under the HEA based on its determination that the application was incomplete under 34 C.F.R. § 682.402(c)(2)(vii), even though Ms. Anderson had submitted a complete application.

### ***Plaintiff Nicole Coe***

70.     Ms. Nicole Coe is 39 years old and resides in Los Angeles, California.

71.     Between 2008 and 2021, Ms. Coe obtained a total principal amount of $57,500 in Direct Loans to attend various institutions of higher education to earn a bachelor's degree.

72.     The current balance on her loans is approximately $65,000. During all

14

___
Complaint for Review of Final Agency Action and Declaratory Relief

times referenced in this Complaint, Ms. Coe's Direct Loans have been in a SAVE plan forbearance.

73.    On November 26, 2024, LAFLA submitted a disability discharge application on behalf of Ms. Coe to the Department via its disability discharge contractor at the time, NelNet.

74.    The application was signed by Ms. Coe and included a certification signed by Ms. Coe's physician, Abigail Sophie Fletcher, who is licensed to practice medicine as a physician by the state of California, as required by 34 C.F.R. §§ 685.213(b)(1) and (2)(i).

75.    The certification was dated November 12, 2024, within 90 days of the date of submission of the disability discharge application, as required by 34 C.F.R. § 685.213(b)(3).

76.    Dr. Fletcher certified that Ms. Coe meets the Department's total and permanent disability discharge because she cannot engage in substantial gainful activity due to an impairment that has lasted or is expected to last for a continuous period of at least 60 months. Dr. Fletcher provided a diagnosis for Ms. Coe of lupus and Sjogren's syndrome, both of which are severe autoimmune disorders.

77.    NelNet, on behalf of the Department, acknowledged receiving the complete application in December 2024.

78.    Because Ms. Coe's disability discharge application met the requirements of 34 C.F.R. §§ 685.213(b)(1) through (b)(3), the application was complete and the regulations required Defendants to review Ms. Coe's disability discharge application for whether she is eligible for a disability discharge under the HEA and its regulations. 34 U.S.C. §§ 685.213(b)(1)-(b)(4).

79.    Because Ms. Coe had not received any notification about her disability discharge application from the Department by mail, email or telephone,

Complaint for Review of Final Agency Action and Declaratory Relief

in or around July 2025, Ms. Coe and LAFLA called the Department's disability discharge hotline to check on the status of her disability discharge application. The representative stated that although she could confirm, from the Department's data system, that a disability discharge application for Ms. Coe had been received by the Department in December 2024, it did not have a copy of the application nor would not obtain a copy of it.

80.    The representative stated that this application would not be reviewed by the Department and instructed Ms. Coe to submit a new application online. The representative further stated that the Department was advising all borrowers who had submitted a disability discharge application prior to March 2025 to resubmit their disability discharge application through the new online system on www.studentaid.gov.

81.    On September 25, 2025, LAFLA submitted a new disability discharge application on Ms. Coe's behalf on www.studentaid.gov which was signed by Ms. Coe and included a disability certification completed and signed by Dr. Fletcher, as required by 34 C.F.R. §§ 685.213(b)(1) and (b)(2)(i).

82.    Dr. Fletcher's new certification was dated August 19, 2025, within 90 days of the date of submission of the new disability discharge application as required by 34 C.F.R. § 685.213(b)(3).

83.    Dr. Fletcher again certified that Ms. Coe meets the Department's total and permanent disability discharge because she cannot engage in substantial gainful activity due to an impairment that has lasted or is expected to last for a continuous period of at least 60 months.

84.    Dr. Fletcher again provided the diagnosis for Ms. Coe of severe lupus

85.    Because this disability discharge application met the requirements of 34 C.F.R. §§ 685.213(b)(1) through (b)(3), the application was complete and the

16

regulations required Defendants to review Ms. Coe's disability discharge application for whether she was eligible for a discharge under the HEA and its regulations. 34 U.S.C. §§ 685.213(b)(1)-(b)(4).

86. In October 2025, LAFLA and Ms. Coe started receiving confusing communications from Defendants regarding her disability discharge application. Although Ms. Coe had submitted and signed the September 2025 discharge application online at www.studentaid.gov and uploaded the certification which had been signed by Dr. Fletcher, the first letter, dated September 25, 2025, stated: "There is an issue with your [TPD] discharge application. Required information from your submission is missing or invalid. We can't process your form without this information. You have until 12/24/2025 to fix the following issue(s) to ensure your application is successfully processed: . . . Your application needs to be signed. You have until 12-24-25 to obtain your medical professional's signature."

87. In response, LAFLA called the TPD Discharge hotline. A representative told LAFLA that it had not received the doctor certification for Ms. Coe's disability discharge application.

88. Because the Department claimed it had not received the doctor certification that LAFLA had submitted online, on October 22, 2025, LAFLA resubmitted the doctor certification dated August 18, 2025, to the Department via facsimile.

89. In late October 2025, during a telephone call to the disability discharge hotline, the Department informed LAFLA that Ms. Coe's disability discharge application was being processed.

90. In early January 2026, LAFLA and Ms. Coe received a letter from the Defendants dated December 24, 2025, stating, "We have stopped processing your [TPD] discharge application because: . . . You did not provide supporting

17

documentation within the 90-day window. We have closed your application."

91.    Defendants provided no other information regarding this "90-day window."

92.    On January 7, 2026, LAFLA received an email regarding Ms. Coe's disability discharge application stating, "We closed your TPD Discharge Application Due To Missing or Invalid Information."

93.    Thus, the Department closed Ms. Coe's October 2025 disability discharge application without any review of whether she was eligible for a disability discharge under the HEA based on its determination that the application was incomplete under 34 C.F.R. § 685.213(b)(3)(ii), even though Ms. Coe had submitted a complete application as required by the regulations.

### ***Defendants' Illegal Disability Discharge Policies***

94.    Upon information and belief, Defendants have adopted a policy of refusing to review disability discharge applications submitted to the Department between November 1, 2025, and the date the Department made the online TPD discharge system available to the public in 2026. The Department has disregarded these applications, rather than reviewing them, and either continued collection on the borrowers' loans or, for borrowers who have contacted the Department via its disability discharge hotline, instructed them to submit new applications online.

95.    Defendants applied this policy to Plaintiffs by failing to transfer a copy of their first disability discharge applications to it new, post-March 2025 third-party contractors for processing, then instructing both Plaintiffs to submit new disability discharge applications with new doctor certifications. As a result of this policy, both Plaintiffs submitted two disability discharge applications supported by two doctor certifications, even though the Department should have reviewed their first disability discharge applications.

18

96.     Upon information and belief, Defendants also adopted a policy of instructing its loan servicers to only stop collection for a limited time period on the loans of borrowers who submit disability discharge applications, rather than for the entire period of time during which a disability discharge application is pending, and allowing guaranty agencies or other loan holders to do the same.

97.     Upon information and belief, Defendants applied this policy to Ms. Anderson. After Ms. Anderson submitted a disability discharge application in February 2025, her loan servicer continued collection on her loans until she requested a forbearance. Then, her loan servicer only granted a forbearance for a few months, resuming collection in September 2025 even though her disability discharge application remained pending.

98.     Upon information and belief, Defendants have adopted a policy of closing disability discharge applications as incomplete under 34 C.F.R. §§ 682.402(c)(2)(vii) and 684.213(b)(3)(ii), even when applications include a medical professional's disability certification dated within 90 days of the date the application was submitted and are therefore complete. This policy is a misinterpretation and violation of 34 C.F.R. §§ 682.402(c)(2)(v) and 684.213(b)(3), which only require that the certification be dated within 90 days of the date of submittal of the application, not the date of the Department's processing of the application.

99.     Defendants applied this policy to both Plaintiffs, denying their disability discharge applications in December 2025 on the basis that they failed to provide "supporting documentation within the 90-day window," even though both Plaintiffs had provided medical professional certifications dated within 90 days of the dates of submission of their applications.

///

Complaint for Review of Final Agency Action and Declaratory Relief

### *Harm to Plaintiffs*

100.    Defendants' closure of Ms. Anderson's complete October 2025 application and failure to determine whether she is eligible for a discharge, as well as its failure to instruct its loan servicers to stop collection on her loans for the entire time that her applications were pending, has caused Ms. Anderson extreme stress and anxiety which has negatively impacted her health.

101.    In addition, to the extent the Department placed Ms. Anderson's loans in delinquency or default status based on payments missed while her disability discharge application was or should have been pending has harmed her credit.

102.    Defendants' closure of Ms. Coe's complete October 2025 application and failure to determine whether she is eligible for a discharge has caused Ms. Coe extreme stress and anxiety which has negatively impacted her health.

103.    Plaintiffs have exhausted all of the administrative remedies available to them and have no other remedy at law to obtain Defendants' compliance with the HEA and the Department's student loan discharge regulations, other than through the relief sought in this complaint.

### FIRST CAUSE OF ACTION

### (Administrative Procedure Act, 5 U.S.C. § 706(2))

### (Brought by Plaintiff Anderson)

### Improper Closure of October 2025 Disability Discharge Application

104.    Ms. Anderson repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

105.    The APA authorizes this Court to hold unlawful and set aside agency action that is arbitrary, capricious, an abuse of discretion, or otherwise contrary to law. 5 U.S.C. § 706(2)(A).

106.    On October 7, 2025, Ms. Anderson submitted to Defendants a

complete disability discharge application that complied with the requirements of 34 C.F.R. §§ 682.402(c)(2)(iv) and (c)(2)(v).

107.    Defendants' closure of this complete disability discharge application in December 2025 constituted final agency action.

108.    Defendants' closure of Ms. Anderson's October 2025 disability discharge application on the basis that it was incomplete due to missing or invalid information was arbitrary and capricious and an abuse of discretion, as the application included all information required by the regulations, including a timely medical professional certification.

109.    Defendants' closure of and refusal to review Ms. Anderson's October 2025 disability discharge application for whether she is eligible for a disability discharge under the HEA and regulations was contrary to 34 C.F.R. §§ 682.402(c)(2) and (c)(3), which require Defendants to determine whether a borrower is eligible for a disability discharge based upon a complete application.

## SECOND CAUSE OF ACTION

### (Administrative Procedure Act, 5 U.S.C. § 706(2))

### (Brought by Plaintiff Anderson)

**Improper Direction to Loan Servicer to Stop Collection for Only Limited Period of Time**

110.    Ms. Anderson repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

111.    The APA authorizes this Court to hold unlawful and set aside agency action that is arbitrary, capricious, an abuse of discretion, or otherwise contrary to law. 5 U.S.C. § 706(2)(A).

112.    After submission of Ms. Anderson's disability discharge application in February 2025, Defendants' direction to MOHELA to stop collection on her

21

loans for a limited period of time, rather than for the entire time her application was pending, was a final agency action.

113.    Defendants' direction to MOHELA to stop collection for a limited period of time on Ms. Anderson's loans based on the submission of her February 2025 disability discharge application, rather than for the entire time this application was pending, was arbitrary, capricious, and an abuse of discretion.

114.    Defendants' direction to MOHELA to stop collection for a limited period of time on Ms. Anderson's loans based on the submission of her February 2025 disability discharge application, rather than for the entire time this application was pending, was contrary to 34 C.F.R. §§ 682.402(c)(2), (c)(3), and (c)(7).

**THIRD CAUSE OF ACTION**

**(Administrative Procedure Act, 5 U.S.C. § 706(1))**

**(Brought by Plaintiff Anderson)**

**Failure to Instruct Loan Servicer to Stop Collection For Entire Time**

**Disability Discharge Application Was Pending**

115.    Ms. Anderson repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

116.    The APA authorizes this Court to compel action unlawfully withheld or unreasonably delayed. 5 U.S.C. § 706(1).

117.    After Ms. Anderson submitted her February 2025 disability discharge application, Defendants were required to direct her loan servicer, MOHELA, to stop collection on her student loans for the entire time her application was pending, as required by 34 C.F.R. §§ 682.402(c)(2), (c)(3), and (c)(7). They have not done so.

///

///

22

---

### FOURTH CAUSE OF ACTION

### (Administrative Procedure Act, 5 U.S.C. § 706(2))

### (Brought by Plaintiff Coe)

### Improper Closure of September 2025 Disability Discharge Application

118.   Ms. Coe repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

119.   The APA authorizes this Court to hold unlawful and set aside agency action that is arbitrary, capricious, an abuse of discretion, or otherwise contrary to law. 5 U.S.C. § 706(2)(A).

120.   On September 25, 2025, Ms. Coe submitted to Defendants a complete disability discharge application that complied with the requirements of 34 C.F.R. §§ 685.213(b)(1)-(3).

121.   Defendants' closure of Ms. Coe's September 2025 disability discharge application on the basis that it was incomplete due to missing or invalid information was arbitrary and capricious and an abuse of discretion, as the application included all information required by the regulations, including a timely medical professional certification.

122.   Defendants' closure of and refusal to review Ms. Coe's September 2025 disability discharge application for whether she is eligible for a disability discharge under the HEA and regulations was contrary to 34 C.F.R. §§ 685.213(b)(1)-(4), which require Defendants to determine whether a borrower is eligible for a disability discharge based upon a complete application.

### FIFTH CAUSE OF ACTION

### (Administrative Procedure Act, 5 U.S.C. § 706(2))

### (Brought by Plaintiff Anderson)

123.   Plaintiff Anderson repeats and realleges each of the foregoing

23

paragraphs as if fully set forth herein.

124.   The APA authorizes this Court to hold unlawful and set aside agency action that is arbitrary, capricious, an abuse of discretion, or otherwise contrary to law. 5 U.S.C. § 706(2)(A).

125.   Defendants' policy of instructing its loan servicers to stop collection on loans subject to a disability discharge application for a limited amount of time, rather than for the entire time a disability discharge application is pending, is a final agency action.

126.   This policy, which, on information and belief, was applied to limit the suspension of collections on Plaintiff Anderson's loans, is contrary to 34 C.F.R. §§ 682.402(c)(2), (c)(3), and (c)(7) and 685.213(b)(3)(i), (b)(3)(iii) and (b)(4), which require Defendants to direct loan servicers and loan holders to stop all collection activity until the Department determines whether the borrower is eligible for a disability discharge.

## SIXTH CAUSE OF ACTION

### (Administrative Procedure Act, 5 U.S.C. § 706(2)(A))

### (Brought by Plaintiff Coe)

127.   Plaintiff Coe repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

128.   The APA authorizes this Court to hold unlawful and set aside agency action that is arbitrary, capricious, an abuse of discretion, or otherwise contrary to law. 5 U.S.C. § 706(2)(A).

129.   Defendants' policy of refusing to review disability discharge applications submitted to the Department between November 1, 2025, and the date the Department made the online disability discharge system available to the public in 2026 is a final agency action.

Complaint for Review of Final Agency Action and Declaratory Relief

130.   This policy, which, on information and belief, was applied by Defendants to Plaintiff Coe's disability discharge application, is contrary 34 C.F.R. §§ 682.402(c) and 685.213(b)(2) and (b)(3), which require Defendants to review disability discharge applications the Department receives for completeness and, for applications Defendants determine are complete, for whether a borrower is eligible for a discharge.

## SEVENTH CAUSE OF ACTION

### (Administrative Procedure Act, 5 U.S.C. § 706(2)(A))

### (Brought by Both Plaintiffs)

131.   Plaintiffs repeat and reallege each of the foregoing paragraphs as if fully set forth herein.

132.   The APA authorizes this Court to hold unlawful and set aside agency action that is arbitrary, capricious, an abuse of discretion, or otherwise contrary to law. 5 U.S.C. § 706(2)(A).

133.   Defendants' policy of closing disability discharge applications as incomplete on the basis that a medical professional certification was not dated within 90 days of the agency's review is a final agency action.

134.   This policy, which, on information and belief, was applied in closing Plaintiff Anderson's disability discharge application and Plaintiff Coe's disability discharge application, is contrary to 34 C.F.R. §§ 682.402(c)(2)(vii) and 685.213(b)(3), which require only that a medical professional certification be dated within 90 days of the date a disability discharge application is submitted, not the date Defendants process the application.

135.   This policy is also contrary to 34 C.F.R. §§ 682.402(c)(2)-(3) and 685.213(b)(1)-(4), which require Defendants to determine whether a borrower is eligible for a disability discharge under the HEA and regulations after it receives a

complete disability discharge application.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully that this Court:

1.      Set aside Defendants' closures of Plaintiffs' disability discharge applications as arbitrary and capricious, an abuse of discretion, or contrary to law, and declare them unlawful;

2.      Order Defendants to review the merits of Plaintiff's applications for whether their loans are eligible for a disability discharge under the HEA and applicable regulations;

3.      Declare Defendants' direction to MOHELA to stop collection for a limited period of time on Ms. Anderson's loans based on the submission of her February 2025 disability discharge application, rather than for the entire time this application was pending, was arbitrary and capricious, an abuse of discretion, or contrary to law;

4.      Compel Defendants to instruct Ms. Anderson's loan servicer to stop collection on her loans until they have completed a review of her application on the merits;

5.      Declare Defendants' policies described in paragraphs 123 through 135 as not in accordance with the law;

6.      Vacate Defendants' policies described in paragraphs 123 through 135;

7.      Order the Secretary to pay the cost of this action, together with reasonable attorneys' fees, pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A), as determined by the Court; and

8.      Grant such other and further relief as the Court may deem just and proper.

DATED: March 3, 2026  Respectfully submitted,


/s/ Robyn Smith_____
ROBYN SMITH
LEGAL AID FOUNDATION OF LOS ANGELES
5301 Whittier Boulevard, 4th floor
Los Angeles, CA 90022
Telephone:   (213) 640-3944
Facsimile:    (213) 640-3911

27